IRENE SELKEN, administratrix of estate of Dean Selken, deceased, appellant, v. NORTHLAND INSURANCE COMPANY, appellee.

No. 49155.

(Reported in 90 N.W.2d 29, 388)

May 6, 1958.

Supplement to dissent June 3, 1958.

1048

John D. Randall, of Cedar Rapids, for appellant.

Silliman & Gray, of Cedar Rapids, for appellee.

PETERSON, C. J.—On September 8, 1952, defendant issued a collision liability insurance policy to Dean E. Selken covering a Plymouth car. The car was wrecked and on January 31, 1953, he bought a Chevrolet, to which the insurance was transferred.

On March 12, 1953, Midwest Motor Agency, an authorized agent of defendant located at Dubuque, Iowa, mailed by ordinary mail to Mr. Selken at Altoona, Iowa, a ten-day notice of cancellation of the collision insurance policy. On April 5, 1953, Mr. Selken had a collision and the Chevrolet was destroyed. The record does not disclose the fact, but apparently Mr. Selken either was killed in the wreck or departed this life thereafter, because the action is started in the name of Irene Selken, his mother, as administratrix of his estate. She alleges the car was of the value of $1300 at the time of the collision and prays for judgment in said amount.

Under the trial court's instructions the question of proper service of notice of cancellation was submitted to the jury. The jury decided in favor of defendant, and plaintiff has appealed.

Appellant assigns three errors. Assignments 1 and 3 are closely related and can be considered together. 1. The burden of proving proper cancellation of the policy rested on defendant and in light of the facts as shown the evidence was not sufficient to prove cancellation. 2. The testimony of the acting manager and secretary in the office of Midwest Motor Agency was not competent under the provisions of section 622.4, 1954 Code, in view of the death of the manager who had signed the cancellation notice.

I. The provision in the policy with reference to cancellation by the company was as follows: "This policy may be canceled by the company by mailing to the insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancelation stated in the notice shall become the end of the policy period. * * *." Notice of

cancellation was mailed as heretofore stated, receipt being accepted by the insurance agent for deposit of the letter in the post office. There was no evidence by either plaintiff or defendant showing actual delivery to, or receipt of the notice by, the insured. The case rests on proof of deposit of the notice in the post office at Dubuque.

While the principal basis for our decision is interpretation of intent of cancellation statutes (sections 515.81 and 518.29), we desire to give consideration to the evidence with reference to mailing of notice of cancellation.

Don Anderson, owner of Anderson Motors, from whom Mr. Selken bought both cars, arranged financing of both cars through Interstate Finance Corporation. Midwest Motor Agency is a part of the Finance Corporation.

The officers and agents of both companies signed policies and documents interchangeably. The president of Interstate Finance Corporation signed Exhibits 3 and 6. These were the policy as to the Plymouth and transfer endorsement as to the Chevrolet.

Witness John P. Majerus, manager of Midwest Motor Agency, testified: "The Midwest Motor Agency was a division of Interstate Finance Company and its office is in Dubuque. We service all of the Interstate Finance Corporation branches. * * * When the Interstate Finance Corporation purchased the finance paper from the automobile dealers, then the Northland Insurance Company would automatically bind the car for collision. In this particular instance, when Dean Selken bought the car from the Anderson Motors, the date that Selken bought the car, the car was bound in accordance with the amount shown in the application that he signed at the Anderson Motors. Plaintiff's Exhibit 3 is signed 'Midwest Motor Agency' by 'D. B. Cassat' and D. B. Cassat is the president of the Interstate Finance Corporation."

Don Anderson testified he knew Dean Selken was teaching at Shellsburg when he bought the Chevrolet in January 1953 and that he lived at home with his mother at Vinton. Mr. Selken's mother testified she knew of only one letter forwarded from Altoona to Dean at Vinton and that was a serviceman's letter.

Selken's conditional sale contract of purchase, Exhibit 2, assigned to Interstate Finance Corporation, and the policy, Ex-

hibit 3, dated September 25, 1952, both state that Dean Selken was obligated to pay $58.52 per month for two years on the Plymouth. Exhibit 6, the endorsement on the policy to provide coverage for the Chevrolet, after the Plymouth was wrecked, stated the terms of the policy remained unchanged. This means that every month for some time prior to attempted cancellation, Mr. Selken was making remittance to Interstate Finance Company from Shellsburg or Vinton.

The receipt of monthly payments and the chain of purchasing, financing and insuring as to the Chevrolet were so interlocked that defendant's agent must have known Dean Selken's correct address when the notice of cancellation was mailed to him.

The presumption as to receipt of an ordinary letter and the steps required to submit such question to the jury are clearly stated in Forrest v. Sovereign Camp, W.O.W., 220 Iowa 478, 480, 261 N.W. 802, 804:

"Because of the probability that the officers of the government will perform their duties in the transmission and delivery of mail, this court has held that it will be presumed that a communication intrusted to the mails, in such manner that these duties are imposed on the officers of the government, will reach its destination. Watson v. Richardson, 110 Iowa 673, 80 N.W. 407. But to avail one's self of the presumption mentioned it is essential that it first be established, as a matter of fact, that all things have been done and accomplished that are a necessary part of imposing on the government officers and employees the duty of transmitting and delivering the letter. These things, the doing of which must be proven, are set out in Central Trust Co. v. City of Des Moines, 205 Iowa 742, loc. cit. 746, 218 N.W. 580, 582, in following language: 'In order to raise a presumption of delivery of a paper through the mail, there must be * * * (3) evidence of the correct post-office address of the person to be charged with receiving it; (4) evidence that the package containing the document was properly addressed; * * *.' "

Goodwin v. Provident Savings Life Assur. Assn., 97 Iowa 226, 241, 66 N.W. 157, 161, 32 L. R. A. 473, 59 Am. St. Rep. 411, was a case where plaintiff had notified a bank, where premiums

were paid, as to change of address from Omaha to Chicago. Defendant mailed the notice involved to Omaha. On trial the defendant relied on fact that notice was sent to its last known address of assured. We said: "* * * the notice was not addressed to the *city or town where the assured, at the time, resided.* He was then living in Chicago, and it seems to be a well-established rule, that, under such circumstances, no presumption arises that the addressee received the notice. [Citations] The court did not err in *refusing to submit* the question as to the actual receipt of the notice by the assured * * * ." (Emphasis ours.)

In Sorensen v. Farmers Mutual Hail Ins. Assn., 1939, 226 Iowa 1316, 286 N.W. 494, 123 A. L. R. 1000, the majority opinion relied in part on the presumption that a letter, properly addressed and mailed, reached the plaintiff in due time, although there was no direct evidence of receipt by plaintiff.

No such presumption can be assumed in this case as the notice was not addressed to Dean Selken where he lived nor where he worked. Goodwin v. Provident Savings Life Assur. Assn.; Central Trust Co. v. Des Moines; Forrest v. Sovereign Camp, W.O.W., all supra; Lundy v. Skinner, 220 Iowa 831, 835, 263 N.W. 520, 522; 31 C. J. S., Evidence, section 136(b).

Lundy v. Skinner, supra, pertained to a notice to a creditor in a bankruptcy proceeding. We held the notice was not good because the wrong address appeared on the envelope, saying: "There would be no presumption arising whatever that a letter or notice addressed to E. W. Lundy, Eldora, Iowa, would be delivered to E. W. Lundy, at Union, Iowa."

As a general statement 31 C. J. S., supra, states: "Receipt of mail matter by the person for whom it was intended cannot be presumed unless it is proved that the matter was properly addressed to him, at the city or town where he resides or has his place of business, with the street and number if it is a city of considerable size, or at the post office where he usually receives his mail."

It is true the policy in this case provided notice could be mailed to insured at "address shown in this policy." Such a policy provision is not supported by section 515.81, 1954 Code, nor by the decisions of this court heretofore cited.

In view of above outlined situation the question of proper notice of cancellation did not generate a jury question. There is no fact controversy as to the notice being mailed to a town where Mr. Selken did not live, nor work. He had not lived there for some time. On this question alone we would reverse the case, but we will also discuss what we consider a fundamental and more important basis for reversal.

██ ██ II. It is basic that the provisions of insurance policies issued in the state of Iowa cannot be contrary to statutory provisions. If the provisions of the policy are contrary to statute they will not be effective. If they need clarification same will be made in accordance with intent of the statute. Marden v. Hotel Owners Ins. Co., 85 Iowa 584, 52 N.W. 509, 39 Am. St. Rep. 316; Harrington v. Bremer County Farmers Mut. F. Ins. Assn., 1926, 203 Iowa 282, 285, 211 N.W. 383, 385; Salmon v. Farm Property Mut. Ins. Assn., 168 Iowa 521, 528, 150 N.W. 680, 682; Artificial Ice Co. v. Reciprocal Exchange, 1921, 192 Iowa 1133, 184 N.W. 756; Federal Land Bank of Omaha v. Farmers Mutual Ins. Assn. (Adams and Adjoining Counties), 217 Iowa 1098, 253 N.W. 52; Galkin v. Lincoln Mutual Casualty Co., 279 Mich. 327, 272 N.W. 694.

In Harrington v. Bremer County Farmers Mut. F. Ins. Assn., supra, we stated: "The burden of establishing an effective cancellation of the policy was on the appellee; and a cancellation by the insurer could only be effected by a strict compliance with the statute."

In Salmon v. Farm Property Mut. Ins. Assn., supra, we said: "The by-laws of the association do not control as against a statute * * *."

██ Chapter 515 of 1954 Code contains the statutory provisions with reference to "Insurance Other Than Life." Section 515.81 provides as to cancellation: "The policy may be canceled by the insurance company by *giving* five days *notice* of such cancellation * * *." Chapter 518 contains statutory provisions with reference to "Mutual Fire, Tornado, Hailstorm And Other Assessment Insurance Associations." Section 518.29 provides with reference to cancellation: "Any policy of insurance issued by any association operating under the provisions of this chap-

ter may be canceled by the association *giving* five days written *notice* thereof to the insured." (Emphasis ours.)

Our latest direct expression on notice of cancellation appears in Sorensen v. Farmers Mutual Hail Ins. Assn., supra. Defendant deposited notice of cancellation in the post office, accepting receipt for deposit of the letter. The provision of the policy as to cancellation was substantially the same as in the policy involved herein. No evidence as to receipt of the notice by insured was produced. The majority opinion held it was not necessary to show receipt, as mailing to proper address presumed receipt. The decision was rendered by a divided court, with two vigorous dissenting opinions by three Justices. The time has arrived to overrule the majority opinion in this case, and we so decide in the case at bar. It is not sound and does not reflect the intention of the legislature as expressed in the statutes heretofore quoted.

In interpretation of statutory provisions the primary object is to arrive at the legislative intent. We have so held in innumerable cases, and discussion of the proposition would be repetitious. Howard v. Emmet County, 140 Iowa 527, 118 N.W. 882; Seavert v. Cooper, 187 Iowa 1109, 175 N.W. 19; Keokuk Waterworks Co. v. City of Keokuk, 224 Iowa 718, 277 N.W. 291; Sinclair Refining Co. v. Burch, 235 Iowa 594, 16 N.W.2d 359.

Section 4.1(2), which is a part of chapter 4 on "Construction Of Statutes", states: "Words and phrases shall be construed according to the context and the *approved usage of the language; * * *.*" The approved usage of the word "giving" is *"to deliver to another"* and of the word "notice" is "to become *aware of something."* (Emphasis ours.) American College Dictionary, 1953 Edition, pages 512 and 829.

Analyzing the meaning of the statutory provision concerning cancellation which provides for "giving of notice" we must conclude that the legislature intended that "giving" means the insured shall personally receive the notice, and that "notice" means he shall receive it so that he becomes "aware of the notice." The provision involves a physical delivery to the insured of a document of which he becomes personally aware. This cannot be accomplished by depositing a document in the mail which he may or may not receive. When the legislature states an insured

shall have "notice" it can only mean that *he shall know* about the fact of cancellation. The statutory provision can only be followed and concluded through actual receipt by the insured of the cancellation notice. This may be by actual service upon him, but it may also be by registered mail, with instructions to deliver to insured only, or legal representative if deceased, and secure signature on a return receipt card.

The provision in defendant's policy as to notice of cancellation does not comply with Iowa statutes. It should provide for receipt of the notice by insured.

 The burden of proof as to cancellation of a policy rests on the insurance company. Home Insurance Co. v. Fidelity-Phenix Fire Ins. Co., 225 Iowa 36, 279 N.W. 425; Harrington v. Bremer County Farmers Mut. F. Ins. Assn., supra; 45 C. J. S., Insurance, section 461(a); Salmon v. Farm Property Mut. Ins. Assn. and Artificial Ice Co. v. Reciprocal Exchange, both supra.

III. The great weight of authority, nation-wide, is that the insured must receive actual notice as to the cancellation. Galkin v. Lincoln Mutual Casualty Co., supra; Farnum v. Phoenix Ins. Co., 83 Cal. 246, 23 P. 869, 17 Am. St. Rep. 233; American Bldg. Main. Co. v. Indemnity Ins. Co., 214 Cal. 608, 7 P.2d 305; Mullen v. Dorchester Mut. Fire Ins. Co., 121 Mass. 171; Protection Life Ins. Co. v. Palmer, Admr., 81 Ill. 88; Rose Inn Corp. v. National Union Fire Ins. Co., 258 N. Y. 51, 179 N.E. 256, 83 A. L. R. 293; Long v. Home Indem. Co., La. App., 169 So. 154; 29 Am. Jur., Insurance, section 285; 45 C. J. S., Insurance, section 461(a).

29 Am. Jur., Insurance, section 285, states: "According to the weight of authority, a notice of cancelation mailed by the insurer does not become effective until it is received, and receipt by the insured of such notice is a condition precedent to a valid cancelation of the policy."

Galkin v. Lincoln Mutual Casualty Co., supra, is similar to the case at bar and is referred to in one of the dissenting opinions in the Sorensen case. The policy provided (page 329 of 279 Mich.): " 'This policy may be canceled * * * upon five days' notice in writing. * * * Notice of cancellation mailed to the last known address of the assured herein shall be sufficient' * * *." The statutory provision in Michigan is similar to our provision.

It provides: " 'No policy of casualty insurance * * * shall be issued or delivered in this State * * * unless there shall be contained within such policy a provision * * * whereby the policy may be canceled at any time by the company by giving to the insured a five days' written notice of cancellation.' "

After discussion of the weight of authority and citation of several of the cases above cited the court stated at page 332 of 279 Mich., page 696 of 272 N.W.: "We are not in accord with appellant's contention that under the terms of its policy mailing notice of cancellation to the last known address of the insured in and of itself canceled the policy. Instead, because of the statutory requirement hereinabove quoted, cancellation could not be effected by the insurer until notice thereof was received by the insured."

In 123 A. L. R. 1008, annotation, we find the following general statement: "By the weight of authority the receipt of a notice of cancelation mailed by the insurer is held necessary."

IV. The recent Minnesota case of Donarski v. Lardy, 251 Minn. 358, 88 N.W.2d 7, 9, 10, 11, in which the decision was rendered in January 1958 supports our position in this case. Farmers Insurance Exchange, an insurance company, had attempted to cancel a policy prior to the collision in which two people were killed and another seriously injured. The provision of the policy was somewhat similar to the provision in the Selken policy. It was as follows: "This policy may be canceled by the Exchange by mailing to the named insured at the address shown in this policy written notice stating when not less than five days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period * * *."

Insurer mailed notice to insured on July 12, 1950, at Box 411, Thief River Falls, Minnesota (the address appearing in the policy), advising insured that date of cancellation would be 12:01 a. m., July 25, 1950. Insured never received the notice. The trial court held the contract between the parties had been complied with and the policy was canceled. The Supreme Court reversed. The court stated: "That issue is whether the policy

here was canceled when it appears from the court's finding that the notice of cancellation was not received by the insured." The decision of the court supporting the decision of this court in this case appears in following quotation: "It is our opinion that the provision means that mailing is a proper mode of communicating notice of cancellation to the insured, but that it does not thereafter relieve the insurance company of the obligation of establishing that the insured received the notice."

V. Counsel for appellant discussed at length the question considered in Item 1. He mentioned the case, and quoted from dissenting opinions in Sorensen v. Farmers Mutual Hail Ins. Assn., supra, in Reply Brief. Appellant's first and third assignments of error attacking the sufficiency of the cancellation notice are broad enough to sustain consideration of method of serving the notice, and reversal of the case.

In view of reversal under such assignments of error we do not reach assignment of error No. 2. Consideration of competency of certain evidence offered in view of the provisions of section 622.4, 1954 Code, is immaterial and unnecessary.

VI. In connection with remanding the case to the trial court the only remaining question of fact for the jury is the value of the automobile at the time of its destruction, provided there is any conflict in the evidence as to this question.

The case is reversed and remanded.—Reversed.

BLISS, OLIVER, GARFIELD, and WENNERSTRUM, JJ., concur.

HAYS, THOMPSON and LARSON, JJ., dissent.

SMITH, J., not sitting.

HAYS and THOMPSON, JJ. (dissenting)—Being unable to agree with the majority opinion in this case, we respectfully dissent.

I. The insurance policy contains the following provision: "Cancelation: * * *. This policy may be canceled by the company by *mailing to the insured at the address shown in this policy* written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice

as aforesaid shall be sufficient proof of notice * * *. Delivery of such written notice either by the insured or by the company shall be equivalent to mailing." (Italics added.)

Under the record there can be no question but that the notice of cancellation was mailed by the company to the insured at the address shown in the policy. The jury found that the policy had been canceled as alleged by the defendant-company. The majority opinion rests chiefly upon the proposition that the cancellation provision in the policy is contrary to the statute governing cancellations, as the statute requires that for a notice of cancellation to be effective, actual receipt of such notice by the insured must be shown. It overrules Sorensen v. Farmers Mutual Hail Ins. Assn., 226 Iowa 1316, 286 N.W. 494, 123 A. L. R. 1000, which, under a statute identical in terms, specifically held actual notice was not necessary.

Passing for the moment the question of the alleged conflict between the statute and the terms of the policy, it seems to us that the court completely ignores rule 334, R. C. P., and bases its reversal upon an alleged error not assigned by appellant, but advanced by the court itself.

Appellant assigns three alleged errors. (1) Court should have sustained motion to dismiss and for judgment notwithstanding the verdict and should have withdrawn the affirmative defense of cancellation in the light of the facts as shown. (2) Testimony should have been excluded under section 622.4, Code of 1954. (3) The burden of proving cancellation being on appellee, the proof as to the mailing of the cancellation notice and another inconsistent piece of mail in the same to Selken was not sufficient to sustain such burden.

Error No. 1 is omnibus in nature and presents nothing for the court to pass upon, rule 344(4), R. C. P., but even conceding it to be a properly assigned error, it concerns only the question (as shown by the argument) as to knowledge of an agent of the company that insured had changed his address from Altoona to Vinton.

Error No. 2 by no stretch of the imagination can be said to present the question determined in the majority opinion.

Error No. 3 clearly refers only to testimony relative to the mailing of the cancellation notice and its sufficiency to sustain

the burden of mailing; and as to whether the ten-day notice required by the policy was given (the notice was mailed March 12, effective date March 22). In fact appellant, in argument, states, "A casualty insurance carrier cannot cancel out an insured except by strict compliance with policy terms and the consent of, or notice to, the assured." (Citing Artificial Ice Co. v. Reciprocal Exchange, 192 Iowa 1133, 184 N.W. 756.)

Certainly it cannot be said that any or all of the assigned errors taken together even hint at the question of whether or not there was a cancellation, in the absence of proof of actual receipt of the notice thereof.

In support of its holding that actual receipt of notice is necessary for an effective cancellation, the majority opinion seeks to support its injection of this proposition into the case by stating, "He [appellant] mentioned the case, and quoted from dissenting opinions in Sorensen v. Farmers Mutual Hail Ins. Assn., supra, in Reply Brief. Appellant's first and third assignments of error attacking the sufficiency of the cancellation notice are broad enough to sustain consideration of method of serving the notice, and reversal of the case."

Again we state that the assigned errors, Nos. (1), (2) and (3), do not even hint at the question of conflict between the statutes and the provisions of the policy as to cancellation. It may be that in a law action errors relied upon for a reversal may for the first time appear in appellant's reply brief and argument, an entirely new procedure to us, and assuming such to be the case, just how does it appear in the reply brief?

Appellee states in brief and argument that it mailed the notice to the address appearing in the policy, as required by the terms of the policy, rather than to where insured was then living, and then cites the Sorensen case to the effect that proof of receipt of such notice is not required. Appellant in reply brief states that appellee fails to point out that the Sorensen opinion was by a divided court and failed to decide whether the terms of the policy conflicted with the provisions of the statute. The appellant then states, "The plaintiff-appellant discussed this facet of the case as a matter of interest because there is strong doubt that the notice of cancellation was ever mailed." We are unable to find in this statement, as the majority of the

members of the court appear to do, a claimed error to the effect that, since it does not appear the notice was actually received, the burden of showing cancellation has not been sustained. Such a contention was not made in the trial court and is not asserted here. We said in Van Donselaar v. Van Donselaar, 249 Iowa 504, 508, 87 N.W.2d 311, 313, that we have never defined what constitutes "arguing" a question. But it must be apparent it is not argued when the brief affirmatively shows the argument is directed to an entirely different point.

II. But, if we assume that reality can be stretched so far that we can say the point upon which the majority reverses was assigned as error and argued, we are still unable to agree that there must be proof the notice of cancellation was actually received. This is the important holding of the majority opinion, and the one upon which it overrules Sorensen v. Farmers Mutual Hail Ins. Assn., 226 Iowa 1316, 286 N.W. 494, 123 A. L. R. 1000. It is also one upon which we take issue.

The majority states that "the great weight of authority, nation-wide, is that the insured must receive actual notice as to the cancellation." Then it cites Galkin v. Lincoln Mutual Casualty Co., 279 Mich. 327, 272 N.W. 694, upon which it leans heavily. In fact, the cases cited by it following the Galkin case are nearly all taken from the Michigan court's opinion therein. They are found in Division III of the majority opinion. But they hardly add up to "the great weight of authority" claimed for them. First are cited Farnum v. Phoenix Ins. Co., 83 Cal. 246, 23 P. 869, 17 Am. St. Rep. 233, and American Bldg. Main. Co. v. Indemnity Ins. Co., 214 Cal. 608, 7 P.2d 305. Yet in Naify v. Pacific Indemnity Co., 11 Cal.2d 5, 10, 76 P.2d 663, 666, 115 A. L. R. 476, 480, a later case than the first two cited, we find the California Supreme Court saying of the question whether notice of cancellation may be given, if so stipulated in the policy, by mailing to the address stated in the policy: "In this simple form, the question may perhaps be answered in the affirmative * * * though it has not yet been directly ruled upon in this jurisdiction [state]." Yet the two California cases first cited were relied upon by the Michigan Supreme Court in reaching its decision in the Galkin case, and are cited and relied upon by the majority here.

Rose Inn Corp. v. National Union Fire Ins. Co., 258 N. Y. 51, 179 N.E. 256, 83 A. L. R. 293, likewise relied upon both by the Michigan court and the majority here, seems to have no relation to the point involved. It holds that where the insured permitted an insurance agency to write its policies in whatever company the agency selected and to accept cancellation notices, the agency was in fact the agent of the insured as to acceptance of such notices. In Long v. Home Indemnity Co., La. App., 169 So. 154, a case decided by an intermediate appellate court, the decision rested largely upon the fact that the notice was attempted to be given by registered mail to be delivered to addressee only. The court said this was not proper, since such a letter would not be forwarded; that ordinary mail would have been much more likely to reach the insured. There was no holding that the notice must actually be delivered.

In view of the actual situation outlined above, it seems difficult to say that the great weight of authority supports the position of the majority. The authorities relied upon in fact narrow down to the Michigan case of Galkin v. Lincoln Mutual Casualty Co., supra, and perhaps two or three very early decided cases in other jurisdictions. On the other hand, there are a great number of recently decided cases to the contrary. The narrow question before us is whether a provision in an insurance policy providing for giving notice of cancellation by mailing to the insured's address as set out in the policy is in contravention of our statute, section 515.81 of the Code of 1958. This provides the policy may be canceled by the company "by giving five days notice of such cancellation * * *." It is the apparent holding of the majority that the contract provision in the policy that the notice might be given by mailing to the address of the insured shown in the policy is invalid as not in compliance with the statute; that there must be shown an actual delivery.

With this we must disagree. There is no provision of public policy that prevents an insured agreeing that mailing a notice to him at the address given in the policy will constitute "giving" him notice. The statute does not say how the notice shall be given; and we think it is open to the contracting parties to agree

as to how it shall be done. The overwhelming trend of authority in recent years upholds this thought. In overruling our own case of Sorensen v. Farmers Mutual Hail Ins. Assn., supra, we are making progress in reverse. Let us look at some of the many recent authorities which are in line with the Sorensen case.

In addition to Home Insurance Co. v. Jones, 192 Ark. 916, 95 S.W.2d 894 (June 29, 1936), there is Wisconsin Natural Gas Co. v. Employers Mutual Liability Ins. Co., 1953, 263 Wis. 633, 640, 58 N.W.2d 424, 428, from which is quoted: "* * * Wisconsin adheres to the rule that where the provision for notice is stated in the contract and cancellation is to be accomplished by proof of mailing, this meets the demand." (Citing Heimbecher v. Johnson, 258 Wis. 200, 45 N.W.2d 610.)

In Medford v. Pacific Nat. F. Ins. Co., 1950, 189 Ore. 617, 642, 219 P.2d 142, 153, 222 P.2d 407, 16 A. R. L.2d 1181, the Oregon Supreme Court pointed out a distinction between clauses in some of the earlier policies and the one relied upon in the case before it. It said: "The provision here is that the policy may be canceled by mailing to the insured at the address shown in the policy a written notice. * * * We hold that the defendant's answer was not demurrable by reason of the omission therefrom of an allegation that the mailed notice was also actually received." It will be noted that the provision for cancellation in the policy under consideration in the Oregon case was identical with that in the case at bar.

Gendron v. Calvert Fire Ins. Co., 1943, 47 N. M. 348, 353, 143 P.2d 462, 464, 149 A. L. R. 1310, 1313, is a case in which the same question was before the New Mexico Supreme Court. It said: "Under the terms of the policy it is not necessary that the insured actually receive notice. * * * Where the insurer has strictly complied with the terms of the policy with reference thereto, failure to receive notice will not render the attempted cancellation ineffective." To the same effect is Seaboard Mutual Casualty Co. v. Profit, 1940, 4 Cir., 108 F.2d 597, 126 A. L. R. 1105.

The question was considered by the Virginia Supreme Court in Wolonter v. United States Casualty Co., 1919, 126 Va. 156, 166, 101 S. E. 58, 61, with this result: "The contract was a valid contract, and the company had the right to cancel it in the man-

ner therein provided." Likewise the Texas Court of Civil Appeals in Duff v. Secured Fire & Marine Ins. Co., 1949, Tex. Civ. App., 227 S. W.2d 257, 258, said: "* * * it has been held in this State that when a policy provides for cancellation by the insurer by mailing notice thereof in compliance with the terms of the contract, cancellation is effected by such mailing whether the notice is ever received by the insured or not." (Citing authorities.)

The Supreme Court of Oklahoma has determined the question, with a discussion as to its reasonableness and validity, in Midwestern Insurance Co. v. Cathey, Okla., 1953, 262 P.2d 434, 436, in these words: "Neither can it be said that the provision is unreasonable or unjust. Under the provision, the assured assumed the risk of receiving the notice when properly mailed to him at the address given in the policy. Under a policy containing the provision involved herein, it would place an unreasonable and unfair burden on the company to say that notice of the cancellation must be actually delivered to the assured. To make such a requirement would be placing additional words in the policy far beyond the actual terms of the policy agreed to by the parties."

Thorough attention was given to the same point by the Washington Supreme Court in Trinity Universal Ins. Co. v. Willrich, 1942, 13 Wash.2d 263, 273, 124 P.2d 950, 955, 142 A. L. R. 1, with this conclusion: "* * * the more recent and, we think, the better reasoned cases from other jurisdictions sustain the validity of such cancellation clauses and hold that the mailing of written notice, in accordance with the provisions of such a clause, is sufficient, whether or not such notice is actually received by the insured." (Citing authorities)

To the same effect are St. Paul Fire & Marine Ins. Co. v. C. I. T. Corporation, 55 Ga. App. 101, 189 S.E. 390; Dent v. Monarch Life Ins. Co., 231 Mo. App. 283, 98 S.W.2d 123; Raiken v. Commercial Casualty Ins. Co., 1926, N. J. Sup., 135 A. 479; McBride v. New Amsterdam Casualty Co., 12 N. J. Misc. 617, 173 A. 346, 347; Kamille v. Home Fire and Marine Ins. Co., 129 Misc. 536, 221 N. Y. S. 38, 39; and Appleman on Automobile Insurance, 476. A case supporting the majority position, not cited in its opinion, is Merrill v. Farmers' Alliance Ins. Co., 155

Kan. 31, 122 P.2d 776. This case with the Michigan case of Galkin v. Lincoln Mutual Casualty Co. referred to above are the only modern cases upholding the majority opinion, or decided under provisions of the policies similar to the one involved here. They represent a distinct minority view and are out of line with sound reasoning and the strong modern trend.

III. It cannot be contended that the decisions cited in the immediately foregoing division of this dissent were made under statutes dissimilar to our section 518.81, or in the absence of any statute. Provisions identical with section 518.81, in substance, are found in the laws of nearly all the states. As an example, the Oklahoma statute provides: "Any policy * * * may be cancelled at any time * * * by the company by giving five days' notice of such cancellation." The statute is in general, almost universal, use. The cases cited hold that the parties may contract as to how the notice may be given, and that an agreement that this may be done by mailing to the address given in the policy is not in contravention of the statute.

IV. The majority points out that the agents of the company should have had notice that the address of the insured had been changed and that he no longer resided at the place stipulated in the policy. This contention is well answered in Gendron v. Calvert Fire Ins. Co., supra, pages 353, 354 of 47 N.M., page 465 of 143 P.2d, page 1314 of 149 A. L. R. It appeared there that, while a California address was given in the policy, and the notice of cancellation was sent there, an agent of the company knew that the present address of the insured was Albuquerque, N. M. The New Mexico court pointed out that there was nothing to show that the insured desired the company to recognize such a change of address or had requested it to amend the policy in accordance therewith. It said:

"There is much reason to be advanced in support of a practice of embodying in the policy of insurance a permanent address to which all necessary mail and notices may be sent [forwarded] to the insured. It is common knowledge that the insured, although having a permanent address in a place where the policy is issued, may travel widely and that he may be in-

volved in accidents in places far removed from the place of his residence. * * *

"What would have been the result if notice of cancellation had been sent to the insured at his present Albuquerque address and he had not received it? He could very properly have complained that the cancellation was not effective because it was not attempted in strict compliance with the terms of the policy."

To the same effect is Raiken v. Commercial Casualty Ins. Co., supra, at page 480 of 135 A. In the case at bar it seems quite evident that if the company had relied upon hearsay or other indirect evidence that plaintiff was living in Vinton rather than Altoona and had sent the notice of cancellation to the former place it would have been vulnerable to the claim that it had not complied with the stipulation in the policy. It is not claimed that the insured had ever given any notice that he wished the address in the policy changed. He was a schoolteacher, subject to change of address from year to year in accordance with his employment; the reason for having a fixed address stipulated in the policy is clear. He could well have protected himself by a notice to the company to change the address, or, as it seems likely he would, by leaving a forwarding address at Altoona.

V. It must be evident that if we strike down this provision which is found in all such policies, by holding that the notice must be actually delivered, we are placing an unreasonable burden upon insurers. Much of our population in these times is not permanently fixed in any one abode, but is transitory to a considerable extent. Employees are required by their duties to move from place to place; unemployed persons move about seeking work. Retired persons often move from the colder regions to warmer climates. So, if an address cannot be agreed upon in the insurance contract, the company will in many cases be without means of making actual delivery of notice. And, it is suggested, the more irresponsible financially, or the more accident prone an insured is, the more likely he is to move about. The insured can always protect himself so as to insure receiving the the notice in one of two ways: by giving the company formal notice that he wishes the contract changed to show a new address, or by leaving a forwarding address when he departs from

the stipulated place. He can control this; the insurer cannot. We cannot think the legislature intended any such oppressive result. If it did, it did not say so.

The majority opinion must be based upon the theory that the statute requires actual delivery of the notice. We have held that a requirement that notice be "given" does not mean that it must be "served." North v. Kinney, 231 Iowa 951, 952, 953, 2 N.W.2d 407, 408. And notice may be "given" by publication or posting, under various statutes, in which instances the notice is often never actually received.

VI. The majority does not stress the contention that the notice of cancellation did not conform to the policy requirement in that it fixed the termination date one day less than the number required by the policy; no doubt for the reason that the rule is well established that under such circumstances the policy is held to be canceled when the full time has expired. Seaboard Mutual Casualty Co. v. Profit, supra, at page 599 of 108 F.2d. Nor do we find merit in the other contentions made by the appellant.

We would affirm the judgment entered in the trial court.

LARSON, J., concurs in Divisions II, III, IV, V, and VI of dissenting opinion.

HAYS and THOMPSON, JJ. (supplement to dissenting opinion).

Since the filing of the original opinion and dissent in this case, the majority has amended its opinion by adding thereto a statement from 123 A. L. R. 1008, annotation, and by referring to and quoting from the Minnesota case of Donarski v. Lardy, 251 Minn. 358, 88 N.W.2d 7. Without doubt the latter case supports the majority opinion herein. However, we think attention should be called to the fact that the Minnesota Supreme Court recognized that it was following a minority view. It did not attempt to support its position by claiming it represented the considered thinking of the majority of courts which have decided the question.

After citing cases, including our own Sorensen v. Farmers Mutual Insurance Association, 226 Iowa 1316, 286 N.W. 494, 123 A. L. R. 1000 (but omitting several others), which hold to

the same view that the parties may contract as to what notice may be given and proof of receipt is not necessary to effect a cancellation, the Minnesota Court said: "It is clear that those cases represent the weight of authority in this country with respect to the issue at bar." 88 N.W.2d 7, 10. It then proceeded to disagree with the majority of jurisdictions upon what seems to us to be a process of strained and illogical reasoning. The net result of our own decision is that we are overruling our Sorensen case which has been the law in Iowa for nearly twenty years, and upon the authority of which thousands of contracts have been made, with support from only three jurisdictions—Michigan, Kansas and Minnesota—against the great weight of authority and, as we believe, upon unsound logic.