(No. 80665.—

MARKETVIEW MOTORS, INC., Appellee, v. COLONIAL INSURANCE COMPANY OF CALIFORNIA, Appellant.

*Opinion filed February 6, 1997.—Rehearing denied March 31, 1997.*

HARRISON, J., dissenting.

John M. Sturmanis and Howard W. Small, of Thomas, Mamer & Haughey, of Champaign, for appellant.

John E. Maloney, of Maloney & Davis, of Urbana, for appellee.

JUSTICE MILLER delivered the opinion of the court:

Plaintiff, Marketview Motors, Inc., filed a declaratory judgment action in the circuit court of Champaign County against defendant, Colonial Insurance Company of California. Marketview alleged Colonial failed to provide proper notice of cancellation of an automobile insurance policy for nonpayment of a premium as required by section 143.15 of the Illinois Insurance Code (215 ILCS 5/143.15 (West 1994)). The trial judge found that proper notice of cancellation had been given and granted summary judgment in favor of Colonial Insurance.

The appellate court reversed. 277 Ill. App. 3d 627. The appellate court held that section 143.15 of the Insurance Code requires an insurance company to provide at least 10 days' actual notice before a cancellation for nonpayment of a premium becomes effective.

Colonial Insurance filed a petition for leave to appeal to this court. 155 Ill. 2d R. 315(a). We allowed Colonial's petition. For the reasons that follow, we reverse the appellate court and affirm the circuit court.

## BACKGROUND

In February 1994, Lawrence Miller purchased a 1987 Chevrolet Monte Carlo from Marketview Motors. Marketview retained a lien on the vehicle. Miller purchased an automobile insurance policy from Colonial Insurance to cover the vehicle. Miller later failed to pay his insurance premium.

On March 17, 1994, Colonial mailed a notice of cancellation of Miller's insurance coverage to Miller and Marketview. As a lien holder, Marketview was entitled by statute to notice of this cancellation. 215 ILCS 5/143.14(a) (West 1994). In addition, section 143.15 of the Insurance Code provides:

"All notices of cancellation of insurance as defined in subsections (a), (b) and (c) of Section 143.13 must be mailed at least 30 days prior to the effective date of cancellation to the named insured and mortgagee or lien holder, if known, at the last mailing address known to the company. All notices of cancellation shall include a specific explanation of the reason or reasons for cancellation. However, where cancellation is for nonpayment of premium, at least 10 days notice of cancellation shall be given." 215 ILCS 5/143.15 (West 1994).

Miller's Monte Carlo was involved in an accident. The accident occurred at approximately 5:15 a.m. on either March 28, 1994, as claimed by Marketview, or March 29, 1994, as claimed by Colonial. As a loss payee under the insurance policy, Marketview demanded payment from Colonial. Colonial denied coverage claiming that the insurance policy was canceled at 12:01 a.m. on March 28, 1994, the 11th day after Colonial had mailed notice of cancellation to Miller and Marketview.

Marketview filed a declaratory judgment action against Colonial. In its complaint, Marketview alleged in the alternative that: (1) it did not receive notice of the cancellation; or (2) it "did not receive ten (10) days actual notice prior to cancellation since letters from California to Illinois take several days to deliver." Under either allegation, Marketview claimed Colonial failed to satisfy the requirements of section 143.15. Therefore, Marketview claimed the Monte Carlo was still insured when the accident occurred.

Colonial filed a motion for summary judgment. Colonial stated it mailed notice of cancellation to Miller and Marketview 11 days prior to canceling Miller's policy

for nonpayment of the premium. Colonial stated it was immaterial whether the accident occurred on March 28 or 29, 1994, because either date was subsequent to the cancellation of the policy. Colonial argued that mailing is the operative act under section 143.15 and that neither actual notice nor additional time for mail delivery is required under the language of the statute.

The trial judge agreed with Colonial and granted Colonial's motion for summary judgment. The appellate court reversed the judgment of the circuit court and remanded for factual findings as to when the accident occurred and when notice was received by Marketview. 277 Ill. App. 3d at 632.

The appellate court held that section 143.15 of the Insurance Code requires an insurer to provide at least 10 days' actual notice to an insured and any mortgagee or lien holder of the insured property before a cancellation for nonpayment of a premium becomes effective. In support of its holding, the appellate court found that section 143.15 contains in one section two distinct provisions relating to notice and that each provision has its own requirements. 277 Ill. App. 3d at 629-30.

The appellate court believed that cancellations for reasons other than nonpayment of premiums are accomplished by mailing notices. These cancellations will be effective if mailed to the proper parties "at least 30 days prior to the effective date of cancellation." 215 ILCS 5/143.15 (West 1994).

The appellate court distinguished the provision regarding cancellation for nonpayment of a premium by focusing on the word "however" and on the phrase "shall be given" in the third sentence of section 143.15. See 215 ILCS 5/143.15 (West 1994). By focusing on this language and contrasting it with the phrase "must be mailed" in the same section, the appellate court concluded that the legislature intended to treat cancel-

lations for the nonpayment of a premium differently than other types of cancellations. The appellate court stated the legislature "intended to shift from a mailing requirement to a requirement of actual notice with respect to cancellations for nonpayment of premiums." 277 Ill. App. 3d at 630.

Colonial Insurance filed a petition for leave to appeal to this court (155 Ill. 2d R. 315(a)) and we allowed Colonial's petition for leave to appeal.

## DISCUSSION

Since the language used by the legislature is the best indication of legislative intent, courts look first to the words of the statute. *Nottage v. Jeka*, 172 Ill. 2d 386, 392 (1996). Section 143.15 in its first sentence provides that "[a]ll notices of cancellation *** must be mailed at least 30 days prior to the effective date of cancellation to the named insured and mortgagee or lien holder." 215 ILCS 5/143.15 (West 1994). Additionally, all notices of cancellation must include a specific reason or reasons for cancellation. Section 143.15 in its third sentence provides that, "[h]owever, where cancellation is for nonpayment of premium, at least 10 days notice of cancellation shall be given." 215 ILCS 5/143.15 (West 1994).

We believe that the third sentence of section 143.15 reduces from 30 to 10 the minimum number of days prior to the effective date of cancellation a notice of cancellation must be mailed when cancellation is for nonpayment of a premium and does not change the method by which that notice is provided. An examination of the statutory history of section 143.15 indicates that in amending the statute the legislature has focused on expanding the number of parties to whom a notice of cancellation must be given in order for an insurance company to cancel a policy. The statutory history does not indicate a legislative intent to shift the notice requirement from mailing to actual notice.

A predecessor section to section 143.15 required an insurance company to mail a notice of cancellation only to the named insured and provided that proof of this mailing satisfied both the 30-day general and the 10-day nonpayment of premium notice requirements. See Ill. Rev. Stat. 1973, ch. 73, par. 755.1b. Later, on January 1, 1976, section 755.1b was repealed and replaced by section 755.14. See Pub. Act 79—686, eff. January 1, 1976 (repealing Ill. Rev. Stat. 1973, ch. 73, pars. 755.1 through 755.10, and adding Ill. Rev. Stat. 1975, ch. 73, pars. 755.11 through 755.24). Section 755.14 increased the number of parties who were to receive notice of cancellation of a policy. The amendment provided that in addition to the named insured, the insured's "agent of record and/or the insured's broker" were also to receive notice of cancellation. Ill. Rev. Stat. 1975, ch. 73, par. 755.14.

Subsequently, the legislature separated the provision describing the parties to whom notice was to be given from the provision governing the method by which that notice was to be accomplished by placing each provision in a separate statutory section. See Pub. Act 80—1136, § 1, eff. July 1, 1978 (amending Ill. Rev. Stat. 1977, ch. 73, par. 755.14); Pub. Act 80—1128, § 1, eff. July 1, 1978 (amending Ill. Rev. Stat. 1977, ch. 73, par. 755.15). Thus, after the amendment effective July 1, 1978, section 755.14 outlined the parties to whom notice must be given and section 755.15 provided the times and the method by which the notice was to be given. See Ill. Rev. Stat. 1979, ch. 73, pars. 755.14, 755.15. Finally, the legislature added mortgagees or lien holders to the list of those entitled to notice of cancellation. See Ill. Rev. Stat. 1989, ch. 73, par. 755.14.

Although the specific reference to giving notice of cancellation for nonpayment of premiums by mail contained in the earlier version of the statute was omit-

ted from the amended 1975 and 1979 statutes and the version of the statute in question here, we believe that the legislature still intended that notice of cancellation was to be made by mail. We believe that in each of the amendments referred to, the focus of the legislature was on the parties to whom notice was to be given and not on the method by which the parties were to receive the notice.

As noted by the appellate court, in the course of these amendments, the reference to mailing notice of cancellation for nonpayment of a premium was omitted. However, we do not believe that by omitting the reference to mailing, the legislature intended to shift to an actual notice requirement. We believe that had the legislature intended such a change it would have explicitly set forth the change in the statute and not left it to be read into the statute by omission.

Our conclusion regarding the legislature's intent is supported by a recent amendment to section 143.15. Subsequent to the filing of the appellate court's opinion on January 31, 1996, the legislature amended section 143.15 of the Insurance Code. See Pub. Act 89—669, § 5, eff. January 1, 1997 (amending 215 ILCS 5/143.15). The amended section provides:

> "Mailing of cancellation notice. All notices of cancellation of insurance *** must be mailed at least 30 days prior to the effective date of cancellation ***. All notices of cancellation shall include a specific explanation of the reason or reasons for cancellation. However, where cancellation is for nonpayment of premium, the notice of cancellation must be mailed at least 10 days before the effective date of the cancellation." Pub. Act 89—669, § 5, eff. January 1, 1997 (amending 215 ILCS 5/143.15).

On April 23, 1996, the amendment was a topic of oral testimony in the House Insurance Committee. The sponsor of the amendment, Representative Brady, introduced William Shepherd, who offered the following testimony as a proponent of the amendment:

"What we're trying to do here is restore the law to what we thought it was, what the Department of Insurance thought it was, and I would suggest what the legislature thought it was prior to the time that the Third [*sic*] Appellate Court District interpreted one of the provisions of the Insurance Code in the case of *Marketview Motors, Inc. v. Colonial Insurance*. \*\*\* Essentially what it did was construe the statute to require an actual notice requirement rather than a constructive or mailbox notice requirement. \*\*\* What this amendment would do would be to restore to the nonpayment of premium sections the mailbox rule. \*\*\* So what this amendment does is take us back to where we thought we were just a few months ago rather than change the notice requirements."

On the floor of the House, Representative Brady summarized the amendment by stating the amendment "clarifies that notices shall be given by mail in the case of cancellation of insurance for non-payment reasons." 89th Ill. Gen. Assem., House Proceedings, April 25, 1996, at 1 (first draft) (statement of Representative Brady). We believe these comments indicate the amendment to section 143.15 was made in response to the appellate court's holding and was intended to clarify the law regarding cancellations for nonpayment of premiums. We view the legislature's amendment of section 143.15 as a clarification of the original language of the statute and not a change in the substantive law. See *Varelis v. Northwestern Memorial Hospital*, 167 Ill. 2d 449, 462-63 (1995). Accordingly, the amendment to section 143.15 supports our conclusion that the legislature never intended to require proof of actual notice for the cancellation of a policy due to nonpayment of a premium.

The authorities relied upon by the appellate court do not compel a different result. See 277 Ill. App. 3d at 630-31. Unless the language of a statute or insurance policy provides otherwise, the timing provision of a notice requirement begins to run upon actual receipt of the notice. See, *e.g.*, *Scanlon v. Empire Fire & Marine*

*Insurance Co.*, 117 Idaho 691, 692-93, 791 P.2d 737, 738-39 (App. 1990) (discussing statutory language); *Rocque v. Co-Operative Fire Insurance Ass'n*, 140 Vt. 321, 325, 438 A.2d 383, 385-86 (1981) (discussing insurance policy language). However, for the reasons discussed above, we believe section 143.15 does provide otherwise. The language of section 143.15, the statutory history of section 143.15, and the legislature's response to the appellate court's opinion indicate the legislature did not intend to impose an actual notice requirement on an insurance company when canceling a policy for nonpayment of premium.

## CONCLUSION

For the foregoing reasons, we believe the legislature intended for proof of mailing to satisfy the notice requirement of section 143.15 (215 ILCS 143.15 (West 1994)) when an insurance company seeks to cancel a policy for nonpayment of a premium. Accordingly, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE HARRISON, dissenting:

I would affirm the appellate court's judgment. For the reasons stated by the appellate court, I agree that section 143.15 of the Insurance Code (215 ILCS 5/143.15 (West 1994)) requires an insurance company to provide at least 10 days' actual notice before cancelling a policy for nonpayment of the premium. I also agree that there is a genuine issue of material fact, precluding summary judgment, with respect to when the 10-day notice period expired here and when the accident actually took place.

I will not repeat the appellate court's well-reasoned construction of the Insurance Code's precancellation notice requirements. The court's opinion has been pub-

lished (277 Ill. App. 3d 627) and is available for review by anyone interested in learning more about it. What does warrant additional comment, however, is my colleagues' reliance on recent changes in the Insurance Code to support their conclusion that the appellate court's interpretation of the law is incorrect.

There is no question that subsequent amendments to a statute may be an appropriate source for discerning legislative intent. *People v. Bratcher*, 63 Ill. 2d 534, 543 (1976). Where a statute is ambiguous and the legislature amends it soon after a controversy has arisen as to its meaning, the amendment may be regarded as a legislative interpretation of the original law rather than as an attempt to change the law. *Church v. State of Illinois*, 164 Ill. 2d 153, 163 (1995); see *Hyatt Corp. v. Sweet*, 230 Ill. App. 3d 423, 433 (1992).

The problem with applying these principles here is that the amendments were made in response to the very case which is now before us for review years after the original legislation was enacted. Rather than reflect the legislature's intent with respect to the original law, the quoted statements from the house floor show nothing more than that certain current members of the General Assembly are unhappy with the appellate court's disposition of this litigation and want it changed. By giving weight to the remarks of these legislators, the majority has helped them achieve that objective. In effect, the court has facilitated a legislative override of the appellate court's judgment.

While not suggesting that anything untoward took place in this particular case, I note that the potential for abuse is substantial. The majority's approach creates a significant danger that litigants with substantial resources or the support of lobbying groups may be able to prevail on the legislature to alter the law while a case is pending on review in order to help them escape the con-

sequences of adverse judgments. Not only is this a subversion of the judicial process, it also raises grave separation of powers concerns under article II, section 1, of this state's constitution (Ill. Const. 1970, art. II, § 1).

The separation of powers principles contained in article II, section 1, of the constitution (Ill. Const. 1970, art. II, § 1) prohibit the legislative branch of government from exercising powers belonging to the judiciary. The General Assembly has the right to draft legislation and to amend statutes if it believes that a judicial interpretation of a law is at odds with its intent. Our court has expressly held, however, that the legislature may not, by amendment, attempt to attribute to the original statute, at the time of a reviewing court's opinion, a meaning different from that declared in the opinion. This court has regarded such efforts as an attempt by the legislature to specify how we should apply the law to the particular case that is before us on review, and we have condemned the attempts as unconstitutional. *In re Marriage of Cohn*, 93 Ill. 2d 190, 203-05 (1982).

*In re Marriage of Cohn*, 93 Ill. 2d 190 (1982), remains the law in this state (see *In re Petition of Kirchner*, 164 Ill. 2d 468, 497 (1995)) and should be followed here. The intervening amendment, and the floor debates on that amendment, should not be taken into account in reviewing the appellate court's construction of section 143.15 of the Insurance Code (215 ILCS 5/143.15 (West 1994)). For this reason, and the reasons given by the appellate court in its opinion, I respectfully dissent.